```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


KAREN MICHELE SALA MICHAELS,    )
          Plaintiff             )
                                )
          v.                    ) C.A. NO. 10-11471-MAP
                                )
WELLS FARGO HOME MORTGAGE,      )
a Division of WELLS FARGO       )
BANK, N.A.,                     )
          Defendant             )
```

### MEMORANDUM AND ORDER REGARDING
### DEFENDANT'S RENEWED MOTION TO DISMISS
### (Dkt. No. 36)

### February 17, 2012

PONSOR, U.S.D.J.

## I. INTRODUCTION

In August 2010, Plaintiff Karen Michele Sala Michaels filed a three-count complaint against Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., arising from Defendant's denial of Plaintiff's application for a mortgage loan modification under the Home Affordable Modification Program ("HAMP"). The complaint seeks a declaration of the rights and duties between the parties and alleges breach of contract and breach of the covenant of good faith and fair dealing. Defendant filed a motion to

dismiss the complaint in September 2010. (Dkt. No. 2.)

In November 2010, the court granted a preliminary injunction, enjoining Defendant from foreclosing on Plaintiff's home. Defendant agreed to reconsider Plaintiff's application for a HAMP loan modification and, after Plaintiff submitted the required paperwork, approved the modification in February 2011. In light of these events, the court denied Defendant's motion to dismiss without prejudice, requesting that the parties file a status report or stipulation of dismissal by May 2011.

The parties, however, continued to disagree on questions of accounting and Defendant filed a renewed motion to dismiss, which is now before the court (Dkt. No. 36). In her opposition to Defendant's motion, Plaintiff indicated that, despite accepting the permanent loan modification, she wishes to proceed with her claims for breach of contract and breach of the covenant of good faith and fair dealing. These claims are based on Defendant's alleged breach of the Trial Period Plan ("TPP"), which Plaintiff argues was a contract between her and Defendant that entitled her to a permanent modification on April 1, 2010. For the reasons stated below, Defendant's motion will be allowed.

Defendant also requests that the court issue a disbursement order regarding funds in an escrow account that was established in accordance with the court's preliminary injunction. The court will not issue such an order at this time, but will make a recommendation for the distribution of the funds.

## II. BACKGROUND

Plaintiff lives with her teenage daughter at 240 South Silver Lane in Sunderland, Massachusetts. In 2009, Plaintiff began to have financial troubles and applied for a Trial Period Plan ("TPP") under the federal Home Affordable Modification Program ("HAMP"). Defendant sent Plaintiff a TPP, which she signed and returned to Defendant. In January 2010, Plaintiff began to make payments under the TPP of $1,317.50 per month. According to the TPP, if Plaintiff complied with the terms of the TPP, her loan would be automatically modified permanently on April 1, 2010. Plaintiff alleges that she fully complied with the TPP, but Defendant nevertheless found her ineligible for a permanent modification in June 2010 and scheduled a foreclosure sale for August 6, 2010. Plaintiff further alleges that

3

Defendant found her ineligible because it miscalculated her income and that she repeatedly attempted to correct Defendant's error to no avail.

At a hearing on November 19, 2010, the court enjoined Defendant from foreclosing on Plaintiff's home and encouraged the parties to reach some resolution of the case. As part of the preliminary injunction, the court ordered Plaintiff to continue to make mortgage payments into an escrow account held by her counsel. On February 10, 2011, Defendant approved Plaintiff for a permanent modification, which she accepted on February 24, 2011. The modification went into effect on March 1, 2011. The modification further reduced Plaintiff's monthly mortgage payments to $1,106.76 -- over two hundred dollars less than the monthly payments set by the TPP. In addition, however, under the modification Defendant recapitalized Plaintiff's mortgage by adding $30,708.62 to the principal.

### III. DISCUSSION

Defendant has renewed its motion to dismiss, arguing that, because the entire complaint was based on the assertion that Plaintiff was entitled to a permanent

4

modification, Plaintiff's acceptance of a permanent modification rendered the case moot. According to Defendant, Plaintiff has obtained the relief she sought on even more favorable terms than she was looking for. Plaintiff contends, however, that her common-law claims for breach of contract and breach of the covenant of good faith and fair dealing should not be dismissed, because Defendant's alleged breach of the TPP agreement caused her to suffer damages even though she eventually received the permanent modification that she requested.

Defendant puts forth several arguments regarding the validity of Plaintiff's claims, including that there is no private right of action under HAMP and that the TPP was not a contract. The court will not consider these arguments now because it is convinced that, even if the TPP were a contract and Plaintiff could at one time bring an action for breach of that contract -- which is far from clear -- the permanent modification that Plaintiff accepted superseded any previous TPP. Consequently, any causes of action Plaintiff may have had under the TPP have been extinguished.

Section 4.B of the permanent modification stated:

"[T]his Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that [Plaintiff] previously entered into with [Defendant]." (Dkt. No. 30, Ex. AA, § 4.B.) Defendant argues that, by accepting the modification, Plaintiff explicitly agreed that the modification would supersede the TPP and extinguish any prior causes of action under the TPP.

Plaintiff disagrees with Defendant's interpretation of Section 4.B. She argues that the parties intended to be bound by the terms of the permanent modification only as of March 1, 2011 -- the effective date of the modification -- and that Section 4.B has no effect on violations of the TPP that occurred before March 1, 2011. Plaintiff argues that Defendant's interpretation of Section 4.B goes beyond its plain terms and, moreover, is unfair and deceptive because it would prevent the borrower from bringing claims for violations of the TPP that arose before the permanent modification went into effect.

Although Plaintiff's argument is colorable, Defendant's interpretation of the permanent modification is far stronger. Section 4.B makes no mention of time frame or

6

other limitations, suggesting that it was intended to supersede all previous agreements completely.  If Plaintiff wanted to receive the terms promised by the TPP and avoid the fees and interest that led to an increase in her principal amount, she could have litigated her breach of contract claim instead of accepting the permanent modification.  She chose not do so.  By accepting the permanent modification, Plaintiff effectively agreed to release claims that may have arisen due to violations of the TPP, including claims for breach of contract and for breach of the covenant of good faith and fair dealing.  Consequently, the court will allow Defendant's renewed motion to dismiss.

One issue that remains to be resolved is the distribution of funds Plaintiff paid into an escrow account per the court's preliminary injunction of November 2010.  The funds were originally intended to be in lieu of mortgage payments from the date of the preliminary injunction until the resolution of the case, but the parties explained during a status conference that when Defendant recapitalized the mortgage, the increase in the principal amount included

funding for the period of time that Plaintiff did not make mortgage payments.

Defendant argues that it is entitled to some of these funds because a substantial portion of the delay in Plaintiff obtaining a permanent modification was attributable to Plaintiff and caused Defendant to incur unnecessary additional legal fees that are recoverable pursuant to the terms of the mortgage. Plaintiff argues, on the other hand, that the delay was due entirely to Defendant's actions. Without an evidentiary hearing, the court cannot determine which party was responsible to what extent for the delay. To shortcut this controversy, the parties should consider simply dividing the funds, with two-thirds going to Plaintiff and one-third to Defendant. This may be viewed as fair, or at least acceptable, in light of the increase in Plaintiff's principal. If this resolution is unsatisfactory to either party, the unhappy party may request that the court schedule an evidentiary hearing to determine the appropriate distribution of funds.

## IV. CONCLUSION

For the foregoing reasons, Defendant's renewed motion

to dismiss (Dkt. No. 36) is hereby ALLOWED.  The parties will have until February 29, 2012 to file a status report indicating whether an evidentiary hearing is required regarding the distribution of the funds in escrow.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge